**UNITED STATES of America**

v.

**Harold HERMAN, Defendant.**

**No. 76 Cr. 1013.**

United States District Court, S. D. New York.

Dec. 12, 1977.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for United States; Jed S. Rakoff, Asst. U. S. Atty., New York City, of counsel.

Koenig, Ratner & Mott, New York City, for defendant; Raphael P. Koenig, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Defendant has timely moved pursuant to Rule 32(d), Fed.R.Crim.Pro., to withdraw his plea of guilty to the Information charging him with selling unregistered stock (Title 15, U.S.C. §§ 77e and 77x). For the reasons set forth below, defendant's motion must be denied.

The defendant, admitted to practice as an attorney and counsellor-at-law in the State of New York, confessed at the time he pleaded guilty to the crime of selling unregistered stock by being an active participant in a major and sophisticated stock swindle.[1] As an attorney, the defendant was retained by the chief actor in a swindle to prepare false corporate minutes. Later, he was requested and did prepare an attorney's opinion letter which opined that a reorganization of certain corporations was exempt from registration with the SEC. Defendant has admitted that at the time he prepared the opinion letter, he knew that the facts upon which it was based never occurred.

As a direct consequence of defendant's acts, the chief actors of this swindle were able to offer to the public shares of stock in a worthless and nearly bankrupt company. Within short order, the price of the stock was manipulated up (from $1 to $7) and many thousands of shares owned by the swindlers were dumped upon the market. The loss inflicted on the public was estimated at over $1.5 million. (Affidavit of Assistant U. S. Attorney Jed Rakoff, pp. 1–11)

Defendant now seeks by this instant application to withdraw his plea of guilty to the aforementioned Information. The reason defendant assigns is premised upon the majority opinion by the Court of Appeals of the State of New York on October 13, 1977, *In the Matter of Chu*, 42 N.Y.2d 490, 398 N.Y.S.2d 1001, 369 N.E.2d 1 (1977). Defendant and his present attorney have interpreted *In the Matter of Chu* as changing the law of New York so as "to mandate an automatic disbarment . . . upon conviction of the charges defendant pled guilty to." (Affidavit of Raphael Koenig, Esq., sworn to November 22, 1977, p. 2)

Until then, according to defendant, he had been advised by his former counsel that by pleading guilty to federal charges not involving or analogous to a felony or felonies under the laws of the State of New York, he would not be automatically disbarred, but might, if he cooperated fully with the Government, "only" be suspended. (Affidavit of David Levenson, Esq., sworn to November 18, 1977, p. 2)

On November 4, 1976 defendant with his attorney present appeared before us to withdraw his plea of not guilty and enter a plea of guilty to selling unregistered stock. At the time of taking defendant's plea, we emphatically stated to defendant (official transcript pp. 12, 13):

> Now, I have been at it long enough, Mr. Herman, to speak very boldly with you and candidly. I don't believe in those surgeons who don't tell a person just what it looks like by way of suffering so that the person will know what he is in for.

---

1. Fifteen persons presently stand convicted of criminal participation in one or another aspect of this stock fraud involving Industries International, a shell corporation whose stock was artificially inflated in price by false rumors and baseless recommendations by brokers. After the price was inflated, the swindlers "bailed out."

I want you to know that from my experience *this may automatically result in your disbarment.* I have represented Bar Associations in my time and many a lawyer has been disbarred as a result of my activities.

And the likelihood is strong that may very well be one of the punishments—form of punishment that may follow your plea just interposed, . . . beyond what I will do when the time comes to sentence. (emphasis added)

After detailing that eventuality to the defendant, the official transcript (p. 14) reveals:

THE COURT: Is that all clear to you?

THE DEFENDANT: Yes, Sir.

THE COURT: Now, do you want to stand on your plea of guilty to each of these two counts or do you want me to have the record reinstate your not guilty plea and set it down for trial.

THE DEFENDANT: I will stand on it, Your Honor.

Other than stating his intention to plead guilty, both defendant and his attorney stood mute on our disbarment observation. Neither objected to our view of the possibility—indeed, strong probability—of defendant's automatic disbarment because of his guilty plea before us. His silence then strikes this court as proof positive that defendant well knew at the time of pleading guilty that automatic disbarment might ensue.

It must be borne in mind that the taking of the plea was under relatively relaxed conditions. At the outset, we acceded to the request of defendant's attorney (a member of a distinguished law firm in this city) that the proceeding not take place in open court; it was held in the robing room. The total transcript (29 pages) reflects our desire to put defendant at ease and to make perfectly clear and in simple terms each and every point the law declares imperative upon the taking of a guilty plea. Defendant stated he was then fifty years of age; he spoke freely and expressed his gratitude for the court's constant concern that he understand everything that was taking place; he unhesitatingly and at considerable length revealed the extent of his illegal deportment—his recital overwhelmingly established ·out of his own mouth the two counts set forth in the information. We were impressed with his frank disclosures and said as much (p. 21 of official transcript):

Then I am satisfied in the light of all that has transpired before me up to this moment, that the plea of guilty should be entered of record. I am satisfied that the defendant knows the nature of this proceeding, and his forthright answers and utterances to me, the facial expressions, the voice and all the other indicia that a finder of the facts employs in order to determine veracity as distinguished from something else, convinces me that a plea of guilty should be entered. . . .

It is noteworthy that defendant's motion was not made until very recently—after the completion of a costly and protracted trial against defendant's co-conspirators brought to a close on October 26, 1977.

The same justice due the accused is due the accuser also. We must consider the strong likelihood that at this late date some portion, if not all, of the Government's proof will be weakened by the extensive passage of time since the defendant had the choice of pleading guilty or standing trial.

In light of what defendant stated at the time he pleaded guilty, his present assertion that he "would not have cooperated had I been informed that such a plea would result in an automatic disbarment" must be regarded as totally unconvincing and without merit.

Defendant's motion, even were his assertions given credence, must be rejected on the law. The Supreme Court stated in *Brady v. United States*, 397 U.S. 742 at 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970):

The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is *not entitled to withdraw*

*his plea merely because* he discovers long after the plea has been accepted that *his calculus misapprehended* the quality of the State's case *or the likely penalties* attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents [citations omitted], *a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.* (emphasis added)

See also *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), where the Court held that to permit withdrawal of guilty pleas made many years prior to a law later held unconstitutional (at p. 773):

> would be an improvident invasion of the State's interests in maintaining the finality of guilty plea convictions that were valid under constitutional standards applicable at the time. It is no denigration of the right to trial to hold that when the defendant waives his . . . remedies and admits his guilt, *he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and conviction* . . . . (emphasis added)

There is no evidence before us that any misconduct or misrepresentation by the Government induced defendant to plead guilty. Defendant's prior attorney's statement that counsel for the Government stated to him that the Government had no desire to deprive defendant of his livelihood is effectively refuted by the sworn statements of the Assistant United States Attorney appearing in this motion.

In his Reply Affidavit (verified December 7, 1977) movant pleads for a trial—a chance, as he states, to put his case to the jury. In the first place, we would heed his plea if there were not already present the obstacles dealt with herein. It would constitute an abuse of discretion to do otherwise.

Secondly, upon a trial, it is hardly conceivable that the movant would overcome the damaging admissions made by him when he entered his plea of guilty to the Information. The defendant is a seasoned practitioner of the law, fifty years of age and a family man. The words defendant uttered cannot now be undone despite his statement at page 7 of his aforementioned Affidavit that "I would have a jury assess my guilt rather than to admit it." Having let fly these words, defendant would as a certainty be convicted by his own admissions. Nor were these admissions made lightly—as we noted, some were made at the time he pleaded guilty; the balance when he testified at the trial of his co-conspirators. These admissions are beyond retraction.

For the above reasons, defendant's motion must be denied.